IN RE ESTATE OF MAGNUS MUNSON.

January 30, 1953.

No. 35,831.

*Frank J. Zima,* for appellant.

*Thornton & Thornton* and *Philip R. Monson,* for respondent Red River Valley Conference of the Evangelical Lutheran Augustana Synod of North America.

[1]Reported in 57 N. W. (2d) 26.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying appellant's motions for an order amending the findings of fact, conclusions of law, and order for judgment, or for a new trial.

The facts of the case are briefly as follows: On May 26, 1949, Magnus Munson died at Alexandria, in the county of Douglas, leaving property therein subject to administration. The only living heirs of the deceased are numerous cousins. After his death one of the cousins, Hilma Stoppel, petitioned the probate court of Douglas county to have her brother, George E. Larson, appointed special administrator, which was done on June 1, 1949. On June 3, 1949, by reason of the fact that a will was found with no executor named therein, Larson, as an heir and special administrator, petitioned the probate court for the allowance of the will and for the appointment of himself as administrator with the will annexed. On July 5, 1949, the will was admitted to probate and Larson was appointed administrator. The estate was administered, and on December 14, 1949, Larson petitioned the probate court for allowance of the final account and for distribution of the estate, setting forth in part:

"That said decedent died on the 26th day of May, 1949, testate, and left him surviving

"The Children's Home in the City of Alexandria, Minnesota, further known as the Bethany Children's Home under the supervision of the Board of Charities of the Red River Conference, a religious corporation.

"who is the sole devisee under the Last Will and Testament of said decedent, and the persons entitled to the residue of said estate."

On January 10, 1950, Larson filed an amended final account and petition for distribution in which the same devisee was named as in the petition of December 14. In the amended final account, however, the amount of the administrator's fee was shown as $1,554.51, which was three percent of the inventory as contrasted with a fee of two percent of the inventory shown in the first account. On January

16, 1950, the probate court filed its order allowing the final account and amended account with the exception of the additional amount asked by the administrator as fees in the amended account.

Up to January 17, 1950, the administrator had been represented by certain attorneys in Alexandria who had assisted him in connection with the preparation of the final account and other matters pertaining to the administration of the estate. On that date these attorneys were discharged by the administrator, and on the same date another petition was filed by the administrator, which petition stated in part:

"That your petitioner does now after careful study of said Last Will and Testament arrive at the conclusion and opinion that said Children's Home is not the sole devisee under said Last Will and Testament of said decedent for the reason that there is no beneficiary or devisee mentioned in said Will of said decedent entitled to receive the residue and remainder of the decedent's property, in this, that by said Last Will and Testament the clause pertaining to the disposition of the residue of the estate of said decedent is so uncertain, indefinite and further fails to name a residuary devisee and that by reason thereof said clause pertaining to the disposition of the residue of decedent's estate is void and of no force or effect.

"That by reason of the facts and circumstances hereinbefore mentioned your petitioner does hereby respectfully request the Court to correct said Final Account and Amended Final Account as regards the disposition of the residue of said decedent's estate and determine in said Order that the persons entitled to receive all the rest, residue and remainder of said decedent's estate are the heirs at law of the said decedent, the first cousins of said decedent, whose names are as follows, to-wit: [here followed 18 names, among which was the name of George E. Larson]."

This petition was objected to by the Red River Valley Conference of the Evangelical Lutheran Augustana Synod and the Board of Charities of the Red River Valley Conference of the Evangelical Lutheran Augustana Synod. Another firm of attorneys in Alex-

andria appeared for petitioner Larson in connection with this matter. After arguments by counsel, the probate court, on February 8, 1950, issued an order in which the order allowing the final account and amended final account filed on January 16, 1950, was reaffirmed in all respects and the administrator's petition of January 17, 1950, was denied. On February 16, 1950, a final decree of distribution was entered in which the residue of the estate was given to the Red River Valley Conference of the Augustana Synod, incorporated under the name of "Red River Valley Conference of the Evangelical Lutheran Augustana Synod of North America," to be used by them in trust for the erection or maintenance of a children's orphan home to be erected near the present site of the Bethany Home in the city of Alexandria, Minnesota. On March 1, 1950, Larson appealed to the district court from the final decree of distribution made by the probate court, which appeal was filed on March 3, 1950.

On March 2, 1950, Oscar O. Gustafson, president of the Red River Valley Conference, filed a petition asking for the removal of Larson as administrator of the estate on the ground that he is directly interested in the estate; that his interest is contrary to the terms of the last will and testament; that he is biased in a personal way in the administration of the estate; that he is not and cannot be neutral to all interests concerned; and that because of his personal interest in the outcome of the administration and because of his attempt to overthrow the will he is unsuitable to act as representative. On March 20, 1950, a hearing was had on this petition, and on June 12, 1950, the probate court entered its order removing Larson as administrator and appointing a successor. In the meantime, however, on March 31, 1950, Larson, individually and as representative of the estate, dismissed his appeal in district court from the final decree of distribution without prejudice, and, on the same day and through the same attorneys his sister, Hilma M. Stoppel, filed a notice of appeal to the district court from the final decree of distribution. After the probate court made its order removing Larson as administrator, he appealed to the district court from that order. In the district court it was stipulated that Larson's

integrity was unquestioned and that the probate file in its entirety should be turned over to the district court to be examined in determining the question of Larson's suitability. On August 18, 1951, the district court entered its findings of fact, conclusions of law, and order for judgment, affirming the order of the probate court removing Larson and appointing a successor. In its memorandum the district court said:

"It is not Larson's integrity, but his suitability which is questioned. The Court feels that a representative is unsuitable if his personal interests are in direct conflict with decedent's intentions and wishes."

M. S. A. 525.501 provides:

"When a representative becomes insane or otherwise mentally incompetent, or unsuitable, incompetent, or incapable of discharging his trust, or has mismanaged the estate, or has failed to perform any duty imposed by law or by any lawful order of the court, or has absconded, or has ceased to be a resident of this state, the court may remove him. * * *"

We have examined the record carefully, and it is our opinion that the order of the district court must be affirmed. Upon the record submitted to the district court, it was entirely within its discretion to affirm the action of the probate court. It is apparent from the record that there is a conflict in interest between Larson, as an individual, and the devisee named in the final account. In his capacity as administrator with the will annexed, it was his duty to act as a champion of the will not as an opponent. It is apparent from the record that the trial court could properly find, as it did, that the representative was personally and financially interested as an heir in the final administration of the estate; that his position was antagonistic to the administration of the will and the carrying out of its terms; and that he was unsuitable to continue to act as administrator of the estate.

Affirmed.

MR. JUSTICE ROGER L. DELL, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.